May it please the Court, my name is Tancred Scavone. I'm from O'Melveny & Myers. We represent the Appellants Motor Vehicle Casualty Company and Central National Insurance Company of Omaha. Your Honor, I'm going to reserve some time for rebuttal, but I'll just launch right into arguments. The issue presented by this first appeal we think is extraordinarily simple. It breaks down to whether one conclusory line in a boilerplate declaration is sufficient in this circuit to support a Section 363M finding of good faith. The answer to that question we believe is no, as we briefed in our papers. Before I get into the details of why we think that is no, though, I think it's extremely important to put this particular bankruptcy appeal in context and why this issue is so important to us and why we press this appeal. This is not a normal bankruptcy in the sort of normal context of how bankruptcy courts see bankruptcies. This is, in essence, an insurance play. This bankruptcy was filed, as the papers below indicate, on the verge, we were, the insurers and Thorpe were on the verge of going to a state court trial where we were going to try the issue of whether or not there was insurance coverage after the insurers had paid out almost $200 million in connection with the underlying claims here. The filing was made, and we think these subsequent settlements, the plan in the case and subsequent settlements were all part of an effort to, in essence, sort of get a leg up on the insurers in this underlying insurance coverage litigation in an effort to really change the contracts, to change our rights of contribution against the other insurers, to give them a leg up, Thorpe, by changing that relationship. The contribution rights to the insurers here are of extraordinary importance because if an insurer in this case is ultimately liable, and we contest that in the state court coverage litigation, we contest that the policies are exhausted. If they're ultimately liable, they're only liable for, in essence, if they have their contribution rights, their pro rata share. If the debtor can use the bankruptcy to change the state law rights that we're guaranteed under our contracts, so that we lose our equitable rights of contribution and our contractual rights of contribution, the economic dynamics change dramatically. Instead of being responsible for one-twentieth of the liability, any one carrier could be responsible for 100% of the liability. Has any of this happened yet? Your contribution or other claim against the settling insurer hasn't been waived yet or eliminated yet, has it? We think those issues will be before this court, both in connection with things that are not now before, in connection with an appeal from the final plan, but we also think that these individual settlements were efforts to basically pre-adjudicate and cut off our contribution rights. This is, after all, this particular settlement for which approval has been sought, is what they characterize as a buyback. It is a final order to buy back the policy to make it so it doesn't exist anymore and protect the carrier that we'd otherwise have contribution rights against with a 105 injunction so we can never go after them. Yeah, but the injunction hasn't happened. No, no, no, the injunction on the sale, because it's a 363 sale, we're not talking about the 524G injunction that might issue in connection with a plan. We're talking about here in connection with a 363 sale of an asset, an injunction immediately going to place a 105 injunction so that we can't go after that other insurer for contribution. When we're asked to defend, for instance ---- My understanding of the court's order was that it carved contribution out of the settlement agreement. Is that correct? Well, Your Honor, that was an issue we wanted to be heard on.  So we weren't able to argue that. I think probably the ---- if I understand the order of the court, the idea would be that the settlement agreement and the buyback agreement and everything else may waive claims by either party to that settlement agreement, but it can't waive claims by you as part of the settlement because you're not a party. Again, Your Honor, crucially, we were not able to argue the merits on the appeal because it was dismissed below. We would ---- we're asking for remand so we can argue those merits on exactly how that settlement works, but we are extraordinarily concerned, and we wouldn't press the appeal otherwise, that in fact the settlement is less than clear in that respect and that the judgment reduction clause that's in there is not effective and that our rights by the nature of the release and the fact that the court is granting an extraordinarily broad release as part of this settlement does impair our rights. Now, Your Honor, in other ways, when I say this is sort of not a normal bankruptcy, it's not just that it's sort of a ---- it's this litigation play. It's also that the ---- it just ---- what's happening below is a sort of completely different context. The case itself earmarks a huge amount of the proceeds of the case to go to lawyers as part of a contingency arrangement. This is extremely unusual in a bankruptcy to pay debtors' counsel with the proceeds of the bankruptcy. Let me ask you this. The district court dismisses your appeal from the bankruptcy as moot. Why is that wrong? Your Honor, it's wrong because the only support that was provided ---- it was found to be moot under 363M because it was a good faith finding. There was absolutely no support provided for this good faith finding other than a one-line conclusory declaration. And our appeal, granted, you know, it rests on whether or not this Court finds that that sort of conclusory declaration by someone who doesn't have personal knowledge and it's admitted by Thorpe that this person was not involved in the underlying negotiations, was not involved in the actual facts that give rise to a good faith finding. And if we were to agree with the district court that it was a good faith negotiation and good faith contract, do you then concede that it's moot? I'm sorry, Your Honor. If we were to agree with the district court that there was no bad faith, would you concede that the appeal is moot? I would ---- we would agree, Your Honor, that under 363 then, whether or not this Court would lose the ability to unwind the sail. I think the answer is yes or no. Is it moot or not if we say we agree with the district court that there was no bad faith? Let me ---- I'll answer no, and let me tell you why. Okay. That's right. I think that the ---- this Court would still retain the ability ---- it would not retain the ability to unwind the sail. In that respect, the answer is yes. It would be the sail itself could not be unwound. But the Court could still have the ability to fashion remedies that don't involve unwinding the sail. And that's what the case under 363M says. We think you could still look then at the judgment reduction clause and you could alter the judgment reduction clause. It wouldn't change the rights. It wouldn't change the sail at all. Okay. But let me make ---- I think I understand your answer. And I think you're not then arguing with respect to mootness that this final ---- that this order is in some fashion contingent, which keeps it from becoming a final order. I'm not entirely certain. The underlying settlement, Your Honor, only part of the consideration changed hands. Half of the consideration has not yet changed hands. So in that respect, the underlying settlement agreement remains contingent. On the approval order becoming final? No, the ---- What I'm asking really is whether there is a clause in this as there is in some of the settlements saying that our final agreement to pay this money in settlement of this claim is to become effective when the approval order becomes final, meaning final and upheld on appeal. Yes, Your Honor. I think the answer to that is yes. The order says it's final. When the transfer took place of the first payment, they don't get the first payment back if the appeal is upheld. We can explore it a little bit with your opponents. Why don't we go to the other side and we'll make sure you have a chance to respond. Thank you, Your Honor. Good morning. Daniel Bustle, Klee Tuchin, Bogdanoff and Stern on behalf of Thorpe Insulation. I can tell already I'm going to have trouble hearing you. Keep your voice up, articulate, speak slowly. Yes, sir. I'm old and I'm deaf. Okay. And I'm soft spoken. Okay. I apologize. Okay. This case does arise in the context of a mass asbestos Chapter 11 case commenced by Thorpe Insulation Company pursuant to 524G of the bankruptcy code. And that issue is one of 13 settlement agreements that Thorpe has entered into with various groups of its liability carriers. And the aggregate of these settlements together with contributions that Thorpe and other Thorpe-related parties will make to the trust will fund an approximately $600 million 524G trust for the benefit of present and future asbestos claimants. These are individuals, thousands of individuals, who have been injured by inhalation of asbestos either installed by  The fifth amended plan of reorganization was confirmed on February the 1st, 2010. And so the plan that the court has before it in the form of the judicial notice sought by appellants has been superseded now twice. The confirmed plan is on review for the federal district court. It's part of the 524G procedure that the federal district court must affirm the injunctions in the plan to become effective. And so there's a full plenary review of the plan going forward in the federal district court as we speak, like just sort of the designation of the record and 52 issues on appeal and all the rest. The basic strategy or point of the Thorpe 524G bankruptcy was to settle with whom Thorpe could settle. And the company has been extraordinarily successful in doing that. Of the original 20 or so insurance companies that were adverse to Thorpe in the coverage litigation in the California Supreme Court, there's only three or four maybe insurance companies left, the appellants and one other group, CNA. The basic strategy is to settle with whom we can settle. As to whom we cannot settle, the plan is neutral. That is, post-reorganization with respect to the non-settling parties, the coverage action will resume with all the rights and all the defenses of the parties left intact. There's a variety of settlement structures that have been agreed to among these different settlements with various groups of companies. In general, they all, in one way or another, depend upon the inducement of a 524G injunction as the predicate or the consideration for the settlement. That is, the 524G injunction will protect the insurers from all present and future asbestos liabilities, including indirect liabilities. The general insurance company settlement that is before the court today went effective immediately upon entry of the court order approving the settlement in the bankruptcy court. That is, general insurance paid $5 million. That money cannot be clawed back. The coverage action was dismissed with prejudice as to general by Thorpe. Related adversary litigation in the bankruptcy court was dismissed with prejudice, and the releases are effective immediately and irrevocable under that agreement. With respect to some of the issues that were raised by Judge Camby with appellants just a moment ago, some of the points made by appellants baffled me. There is no section 105A injunction in the order approving the settlement. There will be injunctions, there were injunctions included in the confirmation order that is now on review in the federal district court. There is no bar of contribution rights or any other third-party claims in the order approving the settlement. Indeed, the order approving the settlement says nothing in this order shall affect or impair contribution rights. The releases are as a standard in the settlement agreement between two parties, mutual releases between them. You agree, your client agrees to make best efforts to get an injunction that would affect contribution rights, isn't that correct? Yes, Your Honor. Settlements do call for us to proceed with the 524G process, which independently we would want to proceed with, but include general as one of the settlement insurers. And that would be your attitude now then is that that might happen or it might not happen, but it hasn't happened yet, is that? I think that's correct. I think that's what appellants just said. Those issues will be before the federal district court. Indeed, they are before the federal district court. A minute ago you said the settlement was immediately affected. There was no clause in there making the settlement contingent on success and appeal of this order. To the contrary. Okay. To the contrary. The settlement became effective. The money was paid. The release was given. The dismissals were present. Of course, there is a back-end payment. There is a provision in the settlement that upon entry of a 524G injunction by the federal district court protecting general consistent with the terms of settlement agreement, an additional payment will be due, an additional $4.75 million. But in your view, the obligation exists. It's just a future obligation. It's a contingent future obligation. If we fail to get the 524G injunction, we keep the $5 million, and the releases are still good. Of course, they don't have the benefit of the 524G injunction. I freely confess my difficulty with bankruptcy, even simple bankruptcy cases. So I'm doing my best here. The district judge says the appeal from the order of the bankruptcy court is moot. Yes. I didn't hear the word mootness out of your adversary's mouth until I raised it, and I have not yet heard it out of your mouth. Why is it moot? It is moot because of 363M precludes appellate relief. And so under this Court's cases, going back to a moot component. And what has to be satisfied in order for it to be moot, and what is the dispute between the two of you as to why it is or is not? There are only two conditions on 363M, or there are only two bases for appellate It's the sale of a disposition of an insurance policy. And those two conditions are that a stay has not been entered of the order, which is clearly true, and that the purchaser is a purchaser in good faith. And it needs to be a final order. The sale order is a final order. It is not unappealable. And that's not in dispute between the two of you that it is a final order? No, I think that that's absolutely indisputable. So the only question in dispute between the two of you then really is the good faith? That's correct, Your Honor. If 363M applies, I think that what follows is a matter of course from this Court's case law and from the statute itself is that the case has to be dismissed as moot. And their argument as to the good faith is that all you've got is this affidavit, and they say, listen, how can we judge that? And the bankruptcy judge says, well, this is obvious. I read the transcript of what the bankruptcy judge said. The bankruptcy judge didn't get into it much more than saying, this is so obvious, how can you even ask me about it? It seems so obvious that this is in good faith. Well, I don't think that it's true that the affidavit is thin. The affidavit is from the president of Thorpe Installation Company, and it is a lengthy affidavit. Right. And the bankruptcy judge believed it. Yeah. And it was uncontroverted. There were no timely objections to it. No contrary evidence was introduced. The author gave it. If one reads it from beginning to end, establishes. And I understand their position was, okay, well, if you believe it, fine. I don't have any contradictory evidence, but I want to – basically, I want to have some time to make some inquiries. I guess take their positions. They had plenty of time, Your Honor. This settlement motion, this sale motion, went on for hearing on October 30th. The motion had been served on September 25th, five weeks before. In accordance with the bankruptcy court practice, all the evidence in support of the motion was filed concurrently with the motion. They were served with a false affidavit and a motion expressly seeking, among other things, an express finding under 363M on September 25th, 2008. There was an objection deadline of October 16th. They filed an objection. The objection says nothing about good faith. The objection says nothing about any evidentiary problem with the false declaration. There were several other objections. Thorpe then files a reply a week before the hearing. After Thorpe files its reply, only on the eve of the hearing itself do the evidentiary objections come to the false declaration and the issue of good faith is tendered. And so what happens is Thorpe files a motion to strike as untimely. Clearly, weeks at a time, out of time, not a day out of time. And the bankruptcy judge grants it and says, no, the false declaration will be admitted. The evidentiary objections are overruled. And the Federal District Court upheld that holding. I think it's impossible to say it would be an abuse of discretion under those circumstances. Okay. One more question. But I want to follow up on the record before the bankruptcy court because I think it is important to understand that it's not the false declaration is a fulsome declaration. It goes through the history of the asbestos litigation at Thorpe. It goes, involving Thorpe, it goes through its insurance situation, which is very complex. Mr. Thorpe then testifies as to the specifics of this settlement, and he testifies as to why the coverage defenses of general and the situation between Thorpe and general justifies the particular terms of the settlement agreement before him. And he says as a matter of his business judgment, as the president of Thorpe, he thinks that it's in the best interest of the estate to enter into this settlement and that the settlement was negotiated at arm's length in a non-inclusive manner. He's the signatory of the settlement. Indeed, he is personally a party to the settlement. He individually and his family signed the settlement. The notion that he has no knowledge of what went on with the settlement is false. One question that still goes to mootness. If we disagreed and found that there wasn't good faith established, what happens? What follows from that? What effect does that have on what the parties have done? Well, I think the Court would then remand for a good faith finding would be the logical result. If, in fact, the Court found that the good faith finding was insufficient or insufficiently supported by the record here, presumably it would remand for findings. If, in fact, there's no as of now, there's no evidence of bad faith finding. See, what I'm getting at is the district court's finding of mootness. The district court says, well, you know, no stay entered. This ballgame is over. And then he goes ahead and rules, which is a little strange, I guess. How does the district court rule, Your Honor? Well, I mean, the district court then goes into the good faith thing after. It seems to me if normally if you decide that something in front of you is moot, you just stop right there and dismiss it. It's required in order to meet the standard of 363M barring appellate review. This is a statutory kind of mootness. This is not constitutional mootness. This is not really the equitable mootness that you see in Roberts Farms and the other bankruptcy cases. This is a specific statute that Congress passed to bolster the finality of bankruptcy sales because of the strong interest in making sure that buyers at bankruptcy sales are secure in their property requirements. So you're saying we're in the same position. Even though the order is presumably final and so on, we still have to rule on the good faith because it might come undone. The only way this Court could reach the merits of this order would be if it were to find that the buyer is not entitled to protection of 363M. There's no stage that's been entered. So the only basis for doing so would be to find a lack of good faith. And so there's a large body of case law with respect to good faith findings in this circuit and outside the circuit going back for many years. And there is no case that overrules a good faith finding on anything like the record that we have here. I also want to point out to the Court that it's not only the Foltz declaration. It's the terms of the settlement itself and the fact that the settlement was supported by all the constituents, that is, that representatives of the asbestos claims present and future also were endorsed court approval of the settlement. They ultimately are the beneficiaries of the settlement because the monies will flow into the 524G trust that will be set aside for the benefit of asbestos victims. Okay. You're well over. This is totally off to one side. You described at one point the affidavit as a fulsome affidavit. You might want to say something like complete or extraordinarily detailed and so on. Fulsome has a negative connotation that you, I'm sure, did not intend. I did not intend. Fulsome, how about that? Go look up fulsome. You don't want to use that word in that context. Thank you. But we understand perfectly what you meant to say. Thank you. Response? First of all, Your Honor, I misunderstood your question, I think, or I misspoke. And I just want to be clear that the settlement is contingent upon the approval order becoming final. I think I misspoke when I answered your question before on that. Are you then arguing that it is not a final order and then even if there is good faith, there nonetheless is an appeal? I'm saying the settlement is not contingent upon the approval order becoming final. The approval order is a final order. Right now. So your basic argument as to mootness really is premised upon the good faith question. Yes. And solely on the good faith question. Well, does the agreement define the final order as an order as to which the time to appeal has expired or has been affirmed? The approval order states that the order is final, meaning that we get to take an appeal. Yes, that permits an appeal. What I'm trying to get at is whether there's anything contingent on success on appeal, which of course would save it from mootness. And I'll just have to read the agreement, I think. But I think I understand, and I may be wrong, but I'm just trying to clarify what's in dispute between you and the other side with respect to mootness. You're clearly contesting with respect to mootness the good faith finding. You say insufficient showing of good faith, therefore not moot. Are you giving us any other basis for saying that it's not moot? One of 363M says specifically that an appeal seeking to unwind the settlement, in essence, is moot if there's a finding of good faith. It doesn't moot relief that the court could grant that wouldn't unwind the sale. So we think that you retain the ability, or the district court retain the ability, to address things like the judgment reduction provision that could be done without unwinding the sale. So I don't, I'm fully in accord that the good faith finding, if we are right and it's inadequate, opens the entire matter up. But we believe that the district court could have reached and should have reached, even if it found that there wasn't good faith, or that there was good faith, the issue of whether or not there could be a cure on the judgment reduction provisions and some of the other clauses that go to our contribution rights. Okay. I think I've got that. But I want to make sure I can nail this down if I can. Do you agree with your adversary that this is a final order for purposes of a determination of mootness? Yes, Your Honor. Okay. We do. Three other points. I'll just have to respond to it very quickly. We definitely, the appellants definitely did specifically contend in the objection we filed to the settlement that the move-ins had not offered admissible evidence sufficient to support the settlement. So there was later objections to hearsay and foundation that were struck, but our objections to whether or not the proof offered in support of good faith were not struck. Those were timely filed, and they're timely part of the record. It's in our objection. It's part of the record SCR 142. Now, let me interrupt for just a moment. You're over time, and I don't want to cut you off, but if you could be economical in the remaining part of your argument, that would be appreciated. Last two points very quickly, Your Honor. There was no factual basis for the judge, we believe, to find below that there was a good faith finding. Unlike a normal 363 sale, she did not enter, she did not approve sale procedures. She didn't oversee an auction. None of the sale process took place before the bankruptcy judge. The entire sale took place privately. So the observations of the judge about, well, the parties are contentious, that really just sort of flipped the burden of proof for us, we contend. And it effectively was a presumption of good faith. And then the last point, Your Honor, is we do believe that the contribution rights are not, there are issues about whether they would be preserved or would not on the merits. You've definitely looked at the clause that says they are. In the very same approval order, there's another line that says, the order shall not alter any right the general may have as a result of its entry into the settlement agreement or its performance of any of its obligations thereunder, to terminate, enjoin, impair, alter, modify, or limit in any way the contribution claims pursuant to California Code of Sale Procedure 877-8, any provision of federal statute or common law or any other applicable state law. The two provisions in the order are contradictory, and they're subject to being thrown back at us later. All it says is this injunction shall not affect something. The status quo remains. You know, whatever defenses the general would have, they have. But I don't know that they're conferred by that agreement. We wouldn't ask for a remand so we could be heard on the merits of those issues. Thank you. Thank you. Okay. Thank both sides for your useful arguments. The case of Thorpe Installation v. Motor Vehicle Casualty Company 0955380 is now submitted for decision.
judges: Tunheim, Canby, Fletcher W.